## OKLAHOMA GAS & ELECTRIC CO. et al. v. MALONEY et al.

No. 28782.    March 14, 1939.

S. N. Bunch, for petitioners.

Claud Briggs, Dennis Wright, and Mac Q. Williamson, Atty. Gen., for respondents.

PER CURIAM. The Oklahoma Gas & Electric Company, hereafter referred to as petitioner, and its insurance carrier here seek a review of an award made by the State Industrial Commission in favor of Roy E. Maloney, hereafter referred to as respondent.

The record shows that on August 20, 1937, the respondent filed with the State Industrial Commission employee's first notice of injury and claim for compensation and therein alleged that while in the employ of the petitioner, on August 21, 1936, he had sustained an accidental personal injury in the form of a nervous breakdown which had been brought on by exposure to heat and vibration in his employment. The petitioner filed an answer wherein it admitted the existence of the relation of master and servant on the date named, but denied the claim of accidental injury and pleaded in bar the failure of the respondent to give the notice required by statute (section 13358, O. S. 1931, 85 Okla. St. Ann. sec. 24). At the hearings held by the State Industrial Commission to determine the liability and extent of disability, the evidence revealed substantially the following facts. Respondent had been in the employ of the petitioner for a number of years and for approximately two years immediately preceding August 22, 1936, had been working in a plant near Ponca City and in which his duties required him to be in and around the boiler room; that the nature and location of his work was such as to expose him to high temperatures and occasionally to intense heat; that respondent, after quitting work on August 22, 1936, drove to Harrah, Okla. and there gave evidence of being in an abnormal condition; that respondent started on his way back to work and wrecked his car near Spencer, Oklahoma; that respondent sustained only minor injuries as a result of his car wreck, but that his mental condition had become such as to alarm his relatives, and that thereupon, upon their application, he was examined by a board duly convened to pass upon his sanity and was committed to the asylum at Supply, Oklahoma, and there confined under treatment for some eleven months; that upon his reception at said hospital respondent was examined and his condition was diagnosed as being one of general paresis of luetic origin and was treated for such condition; that he reacted favorably to such treatment and was discharged from the hospital about July 15, 1937, and was thereafter restored to competency, by the court which had committed him, on or about July 31, 1937, and shortly thereafter filed his application with the commission for compensation. At said hearings the respondent testified that during the latter part of July, 1936, he suffered a heat attack which had discommoded him for a short period, and that he thereafter had a similar attack about the middle of August, 1936, and that he had again suffered a severe attack on the night of August 22, 1936, and following which he quit work. Subsequent to such date he had no distinct memory of anything that had transpired. He further testified that he had informed several of his co-workers and his foreman of the attacks which he had sustained, but this evidence was disputed by the parties named, and their evidence was to the effect that respondent had only complained of not feeling well and that he had made no complaint of being overheated at any time. The evidence further shows that petitioner was informed that respondent had been committed to the hospital at Supply and continued to carry respondent on the pay roll and to pay him regular wages until October 21, 1936. The evidence further discloses the fact that respondent had been an able and satisfactory worker during the years he was in the employ of petitioner and until the time that he quit work on August 22, 1936. The evidence further shows that respondent had no history of insanity in his family and that respondent's blood stream had reacted negatively to a Wasserman test, and that the only evidence of a luetic condition was disclosed by test made upon the spinal fluid and the presence of a lesion in the brain. The medical evidence was in agreement with respect to the fact that respondent had a brain lesion and that he was temporarily totally disabled to perform or-

dinary manual labor and was in irreconcilable conflict as to whether such brain lesion had been caused by overheating or by the pre-existing luetic condition or as a result of the combination of both conditions. The Industrial Commission on the foregoing evidence made the following pertinent findings of fact, to wit:

"That on the 25th day of July, 1936, and on the 18th, 19th, and 22nd day of August, 1936, claimant was in the employ of the respondent and engaged in a hazardous occupation, subject to and covered by the provisions of the Workmen's Compensation Law, and that on the 25th day of July, 1936, he sustained an accidental personal injury, arising out of and in the course of his employment, consisting of a heatstroke, and on August 18, or 19, 1936, and August 22, 1936, claimant suffered a reoccurrence of heatstroke; that at the time claimant sustained the heatstrokes, and for some time prior thereto, claimant had a latent or dormant and inactive syphilis infection which, by reason of the injuries sustained, was aggravated and became active, resulting in paresis.

"2. That the respondent had actual knowledge and notice of the condition of claimant and voluntarily paid wages in lieu of compensation up to and including October 31, 1936, but failed to provide medical attention and hospital care.

"3. That on the 27th day of August, 1936, claimant was adjudged mentally incompetent and committed to Western Oklahoma Hospital for the Insane, located at Supply, Oklahoma, by the county court of Canadian county, Oklahoma, where he remained and was treated until about July 15, 1937; that on the 31st day of July, 1937, in a proper proceeding had before the county court of Canadian county, Oklahoma, the claimant was restored to his sanity, and on the 20th day of August, 1937, filed his claim for compensation before this commission; that the respondent and insurance carrier were not prejudiced by the failure of the claimant to give written notice, within the thirty-day period, or by the claimant's failure to file his claim within the statutory period of one year.

"4. That at the time of said accidental injuries, the claimant's average wages were $145 per month.

"5. That as a result of said accidental injuries, claimant is now temporarily totally disabled from the performance of ordinary manual labor, and has been so since August 23, 1936, and in need of medical care and treatment."

The commission awarded compensation for temporary total disability. The petitioner and its insurance carrier contend, in substance, that the findings of accidental injury and aggravation of a latent, pre-existing condition is unsupported by any competent evidence and that the commission was without authority under the evidence to excuse the failure of the respondent to give the statutory notice of injury.

It is well settled in this jurisdiction that benefits of the Workmen's Compensation Act are not confined to traumatic injury and that a heatstroke or heat exhaustion may constitute an accidental injury. See the case of Gulf Oil Co. v. Garrison, 183 Okla. 631, 84 P.2d 12, and cases therein cited. The injury was one which required skilled and professional men to determine its nature and extent. The testimony of such competent witnesses was in conflict, and therefore the Industrial Commission was at liberty to choose which of such witnesses it would believe and the weight it would give to their testimony. Standard Roofing & Material Co. v. Mosley, 176 Okla. 517, 56 P.2d 847. As has been pointed out, the commission had before it competent evidence which, if believed, was sufficient to support a finding of accidental injury, and therefore it could properly make such finding. Shell Petroleum Corp. v. White, 176 Okla. 573, 56 P.2d 830. The cases cited by petitioners and wherein it has been held that an award based upon a material finding of fact unsupported by any competent evidence will be vacated as a matter of law, clearly have no application to a state of facts such as is here involved.

The next contention of petitioners is directed to the sufficiency of the evidence to sustain the finding of the commission that respondent was not able to give the notice in the time and manner required by the statute and the finding that the petitioners had not been prejudiced by such failure. The argument of the petitioners is addressed largely to the fact that the commission bases its finding in part upon the heat attack which respondent alleged he had sustained in July, 1936, and therefore the respondent should have given notice prior to the date of his commitment by the county court of Canadian county. We do not agree with this contention. The evidence is undisputed that respondent was incompetent from and immediately after the 22nd day of August, 1936, and that this was the date the breakdown of respondent, if due to heat, occurred. The State Industrial Commission is authorized by section 13358, O. S. 1931, 85 Okla. St. Ann. sec. 24, to excuse a failure to give the notice of injury therein required when, for some good reason, the notice could not have been given or else when,

468

upon competent evidence, it is shown that the employer has not been prejudiced by such failure. Curry v. State Industrial Commission, 182 Okla. 119, 76 P.2d 899. Since the evidence in the record was sufficient to support the commission in excusing the failure of the respondent both upon the ground of inability to give the notice within the time required and also upon the ground that the petitioners had not suffered any prejudice, the contention of the petitioners in this connection cannot be sustained. The record presents no error of law, and therefore the award should not be disturbed.

Award sustained.

BAYLESS, C. J., and RILEY, OSBORN, GIBSON, and DANNER, JJ., concur.