**HOLDEN TRAILER MANUFACTURING COMPANY** and **Consolidated Underwriters Insurance Company, Petitioners,**

v.

**James Edward ROBERTS and the State Industrial Court of Oklahoma, Respondents.**

No. 40840.

Supreme Court of Oklahoma.

Oct. 13, 1964.

Spencer W. Lynn, Oklahoma City, for petitioners.

Rollie D. Thedford, Charles R. Nesbitt, Atty. Gen., Oklahoma City, for respondents.

BERRY, Justice.

On June 20, 1963, a first notice of injury and claim for compensation was filed with the State Industrial Court by James Edward Roberts, hereinafter referred to as claimant, naming Holden' Trailer Manufacturing Company and Consolidated Underwriters Insurance Company, petitioners herein, as respondent and insurance carrier. In said notice and claim it is alleged that on March 23, 1963, while lifting a steel

trailer axle, claimant sustained an accidental injury to his back. On June 25, 1963, Fred G. Holden, as owner of Holden Trailer Manufacturing Company, filed employer's first notice of injury with the Industrial Court, stating that employee (claimant) was injured in the course of his employment on March 23, 1963, while lifting a frame; that the injury was to claimant's back and that it required hospitalization and surgery. On June 23, 1963, an answer and response was filed on behalf of respondent and its insurance carrier denying that claimant was in the employment of respondent on or about the date alleged, March 23, 1963, and denying that claimant sustained an accidental injury arising out of and in the course of his employment with respondent on or about March 23, 1963.

On the date of trial, at the insistence of respondent and insurance carrier, the parties stipulated that claimant was employed by respondent on or about March 3, 1963, and that would be the date of the alleged injury rather than March 23, 1963. It was further stipulated that respondent's business was hazardous; that claimant's salary was sufficient to entitle him to maximum benefits, if he were entitled to any. Temporary total disability payments had been made to claimant for approximately two months and his hospital and doctor bills had been paid. It was also at this point in the proceedings that petitioners announced their position to be that if claimant had sustained an accidental personal injury it was while working for another and not while working for Holden, and that they were entitled to a remittitur. It was not disputed that claimant had received surgical operation to his back on April 4, 1963. Also undisputed is the evidence that he was off work and temporarily totally disabled for the time alleged.

The trial judge made an order finding, in part, as follows:

"That claimant sustained an accidental personal injury, arising out of and in the course of his hazardous employment with the above named respond-

ent, within the terms and meaning of the Workmen's Compensation Law, between 3-3-63 and 3-18-63, consisting of injury to his back."

The court further found that claimant had been temporarily totally disabled from March 25, 1963, except for five weeks, up to and including the day of trial; that claimant was still temporarily totally disabled and in need of further medical treatment, and ordered petitioners to continue treatment and compensation payments for a period not to exceed 300 weeks or until further order of the court. This order was affirmed on appeal by the Industrial Court sitting en banc.

Petitioners bring this original action to review the award made to claimant and advance two propositions for the reversal of the lower court:

"1. The evidence does not support the findings of the State Industrial Court.

"2. The findings of the State Industrial Court with reference to employment and accidental injury are so indefinite and uncertain that they should be reversed."

Petitioners in their argument to support the above contentions give particular stress to the order of the Industrial Court in its finding that the date of the accident was "between 3-3-63 and 3-18-63," and that claimant was unable to prove that the accident as alleged happened on March 3, 1963, as stipulated to at the beginning of the trial.

The record discloses that petitioner Holden Trailer Manufacturing Company builds travel-trailer frames and mobile home frames; that trailer wheel axles are shipped to Holden for installation on the frames; that the axles come to Holden with brakes and springs attached and that one such axle weighs approximately 145 pounds.

Claimant testified that he was a welder; that on the day in question he was helping his boss, owner Fred G. Holden, and a fellow worker by the name of McIntire unload a truck load of the above referred to trailer

axles; that he was standing on the ground and that Holden and McIntire were letting the axles down to him from atop the truck; that one of the axles slipped and he caught the full weight of the axle; that he "kind of went down a little bit and felt it hurt my back;" that a week or two after the accident boss Holden sent him to Dr. N, a chiropractor; that he continued working while taking treatment from Dr. N; that Holden then sent him to Dr. H who referred him to Dr. W who operated on claimant's back on April 4, 1963; that claimant returned to work May 5, 1963, doing light work; that he continued having trouble with his back and legs and on or about May 26, 1963, he had to cease working for Holden. Claimant further testified that he did not know the exact date of the accident but that he did know that it was on Monday, March 18, 1963, that he first went to Dr. N. He also testified that occasionally on weekends he would do some welding for a local overhead door company.

R. M., a fellow employee, testified for claimant. He testified he remembered the day the claimant was hurt; that he did not remember the exact date but it was in the early part of 1963; that "Mr. Holden and I were taking axles off the top of the truck, and passing them down and Bud was taking them, Mr. Roberts was taking them." He stated that claimant had put an axle on his shoulder, "turned and stepped on a piece of angle iron and it turned with him;" that Mr. Roberts shouldered the axle instead of going on to the ground with it to get help; that witness got off the truck to help claimant because claimant had the full weight of the axle on him; that at the moment claimant didn't say anything but "we were inside, and he said that that hurt his back."

Fred G. Holden, testified on behalf of Holden Trailer Manufacturing Company. His testimony was that in March, 1963, claimant was working for him; that while claimant did not at any time tell him that he had sustained an injury while working for him, claimant "came in down in the back one Monday morning"; that he,

Holden, then called Dr. N and made an appointment for claimant; that he didn't know the exact date claimant talked to him and that he made the appointment with Dr. N but he was sure it was on a Monday. Witness testified further that claimant continued to work for a short time but that his back bothered "him so bad" he then sent claimant to Dr. H and Dr. H referred claimant to Dr. W who operated; that claimant came back to work on May 6, 1963; that he put claimant to doing light chores up until the time claimant had to quit working.

Dr. N testified for Holden. His testimony was that on March 18, 1963, Mr. Holden called him and made an appointment with him to see claimant; that claimant, shortly after the call, came in for an examination and that in obtaining the case history the following conversation took place:

"* * * And so I asked him if he was hurt on the job, and he said that as far as he knew the first sign of illness had been some 15 days previous to this, *which would have been on March the 3rd,* and noticed that after doing some overhead work." (emphasis ours)

It is obvious from a careful perusal of the entire record that the testimony of Dr. N was introduced for the sole purpose of trying to establish a date for claimant's injury when he was not working for Holden and to lead the lower court to believe that claimant was in fact working for the H Overhead Door Company when he injured his back. Other than when stipulated by the parties that the day of the accident was March 3, 1963, the record is completely void of any testimony that the accident happened on March 3, 1963, until that of Dr. N is reached. From the evidence, Dr. N, and he alone, attempts to fix the date of the accident as March 3, 1963. From his own testimony, as above set forth, since the first day he saw claimant, was on the 18th day of March, 1963, as testified to by both Dr. N and claimant, Dr. N could have set the

date as March 2nd or March 4th because Dr. N testified claimant said "as far as he knew the first sign of illness had been *some* 15 days previous to this", "this" being March 18, 1963. "Some" could have meant 14 days or 16 days, as well as 15 days.

■ We have repeatedly said that this Court is not the trier of the facts, and whether or not an accident occurred in an employment covered by the Workmen's Compensation Law and the time and place thereof are questions of fact for the determination of the Industrial Court, and its findings thereon will not be disturbed by this Court on review if the evidence reasonably supports the findings of the Industrial Court on these questions. Wilcox Oil Co. v. Fuqua, 203 Okl. 391, 224 P.2d 255; Shell Oil Co. Inc. v. Thomas et al, 202 Okl. 190, 211 P.2d 263.

Petitioners' second contention is that the failure of the trial tribunal to fix the exact date of the injury confirms that the evidence is too indefinite and uncertain to sustain the award. But we hold the particular date when the accidental injury occurred in the instant case is immaterial. A workman who is able to prove the occurrence of an accident at a time more or less certain should not be deprived of the benefits of the compensation law because he is unable to prove the exact date on which the accident took place. The exact date of an injury may be material in some instances when there are questions which involve notice or limitations to actions. In the instant case the primary issue concerns the question "was the claimant injured while in the employ of respondent?"

In the Wilcox Oil Co. case, supra, the injury complained of was to the eye. The evidence was undisputed that the claimant had at some time, at some place and in some manner received a piece of steel in his right eye which punctured the lens and developed a cataract resulting in disability to the eye. There was no direct evidence showing how, when or where he sustained the injury. He testified that on and prior to January 1, 1944, he was employed by Wilcox to work around rotary drilling rigs; that his duties required him to work where there was continuous hammering on steel and where chains were beating together; that he did not know how or when he received the piece of steel in his eye; that he knew of no other place where he could have received the steel in his eye. The trial commissioner, after hearing the evidence, found that claimant, in "January, 1944," while employed by Wilcox sustained the accidental injury complained of. In that case, even though the finding of the time of the injury was just "January, 1944" we held that the evidence was sufficient to support the finding of the lower tribunal that the claimant had sustained an injury arising out of and in the course of his employment.

In Shell Pipe Line Co. v. Camper, 143 Okl. 94, 287 P. 1009, employer contended it "should not be held liable for the payment of an award for compensation based on an accident occurring May 22, 1928, when the notice of the injury and claim for compensation alleged that the accident occurred 'about the middle of June, 1928.'" In that case claimant testified from memory as to the injury, which happened nearly 12 months prior to the hearing, that the accident complained of happened "in the first part of June," that he didn't know the exact date but that it happened on the last day he worked for employer. The books of the employer showed that the last day the claimant worked was May 22, 1928. In that case we held there was no fatal variance between the allegations and the proof as to constitute reversible error.

In Michel v. Maryland Casualty Co., La. App., 81 So.2d 36, in a somewhat similar case to the one at bar, where the claimant and two co-employees testified that claimant had sustained an accidental injury while employed by employer and could not fix the exact date, the Court of Appeals of Louisiana said:

"Michel admitted on the witness stand that he could not recall the exact date

**954**

of the accident, whether on September 20th as alleged or on any particular date within the two weeks thereafter. Like the District Court, we do not feel that the inability of this laborer with an admittedly poor memory to recall the exact date or time of an accident is any indication that the accident did not occur."

The award to claimant by the lower court was affirmed.

■ We think the evidence in the case before us amply supports the finding of the Industrial Court. Claimant's testimony as to the happenings of events was corroborated by co-employee McIntire. Owner Holden filed a Form 2, employers first notice of injury, with the State Industrial Court stating that claimant had sustained the accidental injury complained of while employed by his company. Though at the time of trial he stated he didn't know anything about the injury, he did agree with claimant that it was on a Monday that claimant "came in down in the back" and that he sent claimant to Dr. N and Dr. H.

Dr. S testified for claimant by written report. He stated that claimant should be readmitted to the hospital for intensive physiotherapy and mobilization procedures. Dr. B also testified by way of written report for claimant stating in his opinion complete healing of claimant's back still had not occurred and it was possible that further surgical procedures would be necessary and that the claimant was temporarily disabled to do ordinary labor.

Petitioners failed to introduce evidence to show that claimant's injury occurred other than as shown by his evidence. At best, petitioners' evidence appears as an effort to impeach claimant's testimony and show that his injury could have occurred while working for the H Overhead Door Company on weekends.

We find that the petitioners have failed to establish that the Industrial Court's findings are without competent evidence, reasonably tending to support them. Accordingly, the order and award of that Court is hereby sustained.

BLACKBIRD, C. J., HALLEY, V. C. J., and DAVISON, JOHNSON, WILLIAMS, JACKSON and IRWIN, JJ., concur.